Judge Coalter,

delivered his opinion.
The verdict in this case, which finds for the plaintiff the lands in the declaration mentioned, subject, to the opinion of the Court on two points submitted by the jury, states that Dr. William, Lynn was seised of the lands in controversy. at the time of his death, and made his will, which they find, and set out at large, in their verdict. In this will is the following clause: “I give to my daughter Ann De.nl, during her natural life, the use of my dwelling-house and kitchen, lot and garden, with their appurtenances55 (this, I understand, was his house in Fredericksburg, and is no part of the premises in controversy,) “also my home plantation in Culpeper county, which I bought of William Eddings, containing 599 acres; also a tract of land thereto adjoining, which I bought of Mr. Alexander Waugh, containing 230 acres; also the following slaves,55 (naming a number of slaves and other personal property) *550 “to hold the said houses, lot, garden, lands, slaves and personal estate, to my said daughter Ann Deni, during her natural life, and after her death to be equally divided among the children of my said daughter Ann Dent, and their heirs or assigns; but if she should die without issue, then I give the same to be equally divided among the children of my' reputed daughter Mrs. Hannah M’ Cauley, of her lawfully begotten, and their heirs and assigns forever. ”
The jury, as I have before stated, find for the plaintiff)' if, under the will of Dr. William Lynn, found by them as aforesaid, and in the event of the death of Ann Dent, without ever having had any child or children, which happened before the institution of this suit, the heirs of Mary Duncanson (who are the lessors of the plaintiff) who was born before the making of the said will, and who died in the life-time of Hannah M’ Cauley and Ann Dent, in the said will mentioned, (and who was the only and legitimate child of Hannah M’ Cauley, who died without ever having had any other child or children, and before the institution of this suit) are entitled to the lands in question; and if the Court shall also be of' opinion, that there being devised by James Duncanson to the lessors of the plaintiff, children and heirs of the said James Duncanson and Mary his wife, lands of more value than the lands in question; and the said James Duncanson having warranted the lands in question, by deed in the following words, (which is set out at large) does not destroy the right of the lessors of the plaintiff, to recover.
The will bears date in February, 1758, and is recorded in March of the same year.
■ The deed found as aforesaid, bears date on the 13th of October, 1780, and purports to be a deed between James Duncanson and Mary his wife, of the one part, and Thomas Porter of the other; and that, for the consideration of ¿81,200 current money of Virginia, to them paid, &c. they had bargained, sold, &c. to the said Porter,' his heirs and *551 assigns, that tract or parcel of land, lying in Culpeper couniy, whereon James Finney formerly lived, containing 600 acres more or less, bounded, &c. with the appurlenanees, &c. “with all rents and reversions of rents, and all the estate, title, interest, profit, claim and demand whatever them the said James Duncanson or Mary Iris wife, in and to the premises aforesaid, and every part and parcel thereof; to have and to hold the said premises and appurtenances to the said Thomas Porter, his heirs and assigns forever, to his and their own proper use and behoof. ” And “ the said James Duncanson and Mary Ills wife, for themselves, their heirs, executors, and administrators, doth covenant and grant to and with the said Thomas Porter, his heirs and assigns, that the said Thomas Porter shall and may, at all times hereafter, peaceably and quietly have and hold and enjoy, the hereby conveyed land and premises and every part thereof, without the lawful claim or interruption of him the said James Duncan-son or his heirs, or any other person claiming from, by, or under him, or any of them; and that the said James Duncanson and his heirs, the said land and premises a nd every part thereof, unto the said Thomas, his heirs and assigns, shall and will warrant, and forever defend, against him the said James Duncanson and his heirs, and against all and every person whatsoever, claiming by, from, or under him or any of them. ”
This deed purports to be signed and sealed by James Duncanson and Mary Duncanson. There are no witnesses to itj but on the 16th oí' October, 1780, (three days after its date) it was acknowledged in Culpeper County Court by James Duncanson, and ordered to be recorded.
The questions thou intended to be submitted by the jury were, first, whether the limitation over to Mrs. Duncan-son, in the events which happened, were good? Secondly, whether the warranty in the deed bars the lessors of the plaintiff?
*552 We are, however, told, that as various other tracts of land were devised by the will aforesaid, it does not sufficiently appear that the tract of land in controversy is that tract, or any part of it, which is devised by the clause above cited.
The tract of land claimed in the declaration, is five messuages and five hundred acres, in Madison county.
I suppose the Court can judicially know, that in December, 1792, Madison county was taken from Culpeper; so that these lands, formerly in Culpeper, might thereafter lie in Madison. 13 Hen. Stat. 558.
It appears to me, that the events which the jury find as having taken place, could not have been important, in relation to any other lands devised by the will, except those mentioned in the clause above cited, though several tracts, lying in Culpeper, were devised.
As this is not a special verdict, but one merely submitting certain points for the opinion of the Court, evidently growing out of the clause first above cited; and as this is moreover an action of ejectment, which, if any mistake has occurred, will not bind the rights of the parties, but can be put right on the trial of a new ejectment, I think it would be improper to direct a new trial, on account of this ' supposed imperfection in the present verdict.
Taking the land in controversy, then, to be that devised by the clause above quoted, I think, in the events that have happened, the limitation over is good, as a remainder in fee to Mrs. Duncdnson, and that the lessors of the plaintiff are entitled to the land, unless they are barred by the warranty of their ancestor, under the circumstances found by the jury. This seems to me to be the only and great question in the cause. It is one, concerning which I have had great doubt and difficulty; insomuch, that I am happy that this is a case of ejectment, in which, as I understand, one trial, even in a case where this Court shall pronounce its opinion, is not absolutely final and conclusive of the rights of the parties.
*553 Wo come now to the deed; and one important enquiry will be, taking the whole deed together, what was the object and intention of the parties, by the clause of warranty contained in it. In other words, against whom did the warrantor intend to warrant ?
He did not intend a general warranty against all the world. On the other hand, 1 suppose it will readily be conceded, that he intended at least to warrant, that neither he himself, nor any person claiming under him, either by purchase or descent from him, should claim; nor should any claim under such person, so claiming under him. This would be the literal, but is it the fair and full construction of the deed, taking all the parts of it together?
To carry it further, we must decide one of three things: 1st. He intended to warrant that neither he, nor his wife, nor any person under them, should claim; or, Sdly. He intended to warrant against the claim of any one, who, at that time, shall prove to be his heir, although he does not claim the land by purchase or descent from him, but, by purchase or descent from some one else, and that no one shall claim, either by purchase or descent, under such person; 3dly. Or, it was his intention to warrant that neither, nor any child of his by his wife, nor any person claiming under them or such child, should claim.
Taking it, for granted, that his intention was to sell, not merely his own contingent, interest in this land, hut that of his wife also, and those interests only, he then did not intend to warrant, 1st. That Mrs. Dent would not have a child, whereby the whole estate might be defeated; nor, 2dly. That Mrs. M’Cauley would have no more children, whereby it might bo defeated in part. But, 3dly. Did he mean to warrant, that in the event that his wife should not unite with him and execute the deed, so as to pass her interest, and should survive him, she should not claim?
If this was his intention, it is strange that neither the clause for quiet enjoyment, nor the clause of warranty, say any thing as to her claim. It either was believed that *554 she would convey, or it was known or believed that she would not. If the former, then it was only necessary to warrant against her, in order to guard against the accident of her death, before she executed the deed. But the vr.antor might say, “I will not subject myself to this risque and its consequences. The intention is, that both shall convey, but I will not warrant against her; you must see that both convey, or vacate the contract. ” Or, if it was believed that she would not convey, the grantor might say, “ I will not warrant against her, but only against myself and my heirs.” That some considerable risque was contemplated by the parties, may perhaps be inferred from the small consideration stated in the deed; the sum, at the then state of depreciation, being very small.
But, be this as it may, either in consequence of some omission in the deed, or for some reason operating on the parties, there is no clause of warranty against her. And it seems to be admitted, 4th. That in the event that Mrs. Duncanson did not unite in the deed, so as to pass her interest, and in the further events that she should survive Duncanson, and have children by another husband, it was not intended to warrant that such husband should not claim courtesy, or, that those children should not claim all the land, if his children by her were dead, or a part, if they were not, Nor, 5th. Did he intend to warrant, that in the event of her not uniting in the conveyance, and in the further event that she should leave no child by any husband, that her collateral heirs should not claim.
If he intended to warrant against all those mentioned in the. 3rd, 4th and 5th cases above put, the deed ought to have contained, or must now be construed as meaning a general warranty against himself and his wife, and all the world, who might claim by, through, or under them, or either of them.
I had great doubts, at first, whether the deed ought not to be so construed. As the object seems to have been to sell the interest of himself and his wife in the land, it would *555 seem reasonable that the purchaser should be secured against, all persons claiming under them or either of them. But, if I am correct in the conclusion I have come to above, that it was not intended to warrant against the claim of the wife herself, in case she should not unite in the deed, but survive the husband, the same course of argument would seem to repel the construction, that it was intended to warrant against all persons claiming under her. I now think, that I should not be justified, in putting so broad a construction on the deed, as 1 at first supposed.
But, it may he said, that if the wife, or any person claiming under her, proved, at the time of such claim, to he the next of kin and heir to the husband, it was intended to warrant against such person. As to such claim by the wife; let us suppose that Mrs. Duncanson herself had survived her husband, and, being next of kin, was his heir at law; would she ho barred from claiming her own fee simple land, aliened by him during the coverture ? If they had been lands, io which even her title was complete, and reduced to possession, so as’to entitle her husband to courtesy in case of survivorship, 1 apprehend this collateral warranty would not hind her. If it would, it would bind - her without assets; for, the statute of Gloucester does not extend to her. Co. Litt. 379, b, 381, a; 2 In. 292, 293, 294. In fact, she never was considered within the mischief of the statute, which extends only to her heirs, not to herself. Her fee simple interest, it would appear to me, would at least ho as secure to her, as her dower interest, which cannot be divested of its original essence, and which is, therefore, not barred by a collateral warranty of the ancestor of the dowress. Co. Litt. 389, a; 10 Co. 986. But, for another and conclusive reason, it ap pears to- me, she would not he barred. She never could sue for the land during the life-time of the husband, and therefore no. breach of the warranty, arising from the claim of the wife, could lake place in his life-time; so that he would never be hound in his life by a warranty against *556 her. In fact, it would be a warranty binding only on her as his heir, after his death, and not on him. But, it is a maxim in law, that such a warranty as never binds the ancestor, cannot bind the heir. Co. Lift. 386, a.
But, if it cannot be so construed as to the wife, it may be said that if any of the persons mentioned in the fourth and fifth cases above put, proved to be the next of kin and heirs of the grantor when they claimed, it was the intention to warrant against.them, in the event that they should happen to be his heirs; although, they did not claim the .land under him, and although he did not intend to warrant against the very same claim, provided it was made by one not his heir.
- This would appear to me, not only to be a refinement and subtilty of construction which the deed will not warrant; but, that the following consequences, fatal to the alledged bar in this case, would be the result. Thus, the husband conveys with special warranty, as in this case, and the wife dies, and her heirs, either lineal or collateral, claim the land during the life of the husband; there is no warranty against them, as her heirs, or persons claiming under her generally; and, so this would be no breach of warranty by the husband. They are not his heirs, for no one is heir to a person alive; and, as he is now ¿supposed to warrant only against persons, who, at the time they claim, prove to be his heirs, the warranty cannot bind him during his life, and, consequently, never can bind his heirs, according to the maxim above stated.
A warranty of this special kind by tenant by the courtesy, I apprehend never could bar his heirs. To bind them, it must' also bind him, and, consequently, if it is not a general warranty against all the world, so as to be binding on him whenever a claim is made, or at least such 'warranty as I, at one time, was disposed to think this was, to wit: against himself and his wife and all persons claiming under them or either of them, it seems to me that it could not bind or bar his heirs. So, that if the construe *557 tion could be maintained, that this was a warranty against every one, as well children by her, as every one else, who might prove, at the time of claim, to he his heir, it appears to me that the construction would not aid the appellees.
But it may be said, (and indeed, as I understand it, that is the construction mainly contended for in the argument,) that he intended to warrant against any claim by his children by her, or any person under them; so as to make it like a warranty against J. S. his heirs aud assigns. Had the clause of warranty been expressly to this effect, or if it can ho so construed, then he might have been bound thereby in his life-time, because any claim by such person, in his life-time, would have been a breach of the warranty by him, and he could have been vpuched, &c.; and consequently, such claimant after him, having assets by descent of equal value, would be barred, unless some other objection taken, would avail. But can we do so great a violence to the deed as to change the word heirs into the words children by her? As her interest, as well as his, in the laud, seems io have been 1he subject of the sale, it seems to me more reasonable to extend the warranty to mean all persons who might prove to be Ids heirs, than to limit it to Ms children by her, who of course would be his heirs. In short, it was probably intended by the parties, that she should unite in the conveyance, and in that case all persons claiming under her would he barred, so as to render any warranty as to them, unnecessary; but as that did not take .place, I do not see that for that reason, we can now do so great a violence to the deed. On the other hand, if it was not expected that she would join in the deed, though it purports to be made and sealed by her, it is strange that a warranty against her and her heirs, if such was intended, should be entirely omitted; or, if it was intended to warrant against himself and her children by him only, that the deed should not have so expressed it. If these were the views of the parties, then it was intended to bar those children, not by her deed, but by the collateral warranty *558 of their father. It can hardly be presumed that this doctrine of collateral warranty was either contemplated or understood by the parties; arid if contemplated, was certainly not understood, or different words would have been used. Suppose she had survived, and had sold for value, or made a deed of gift of these lands to her children, as she might have done to a stranger who might have sold or given it to them; would her power, she having the complete title in her, to aliene to them, be in effect defeated by tljis warranty, so that they could not claim under such deed? If her name had not been in this deed, so that it clearly appeared that she was not expected to join in it, and the object was, to warrant only against himself and his children by her, he would have covenanted and bound himself and his heirs, that neither he nor his children by her, nor any person under them or any of them, should claim. This is the construction now under consideration; and can the deed be so construed? I should doubt this extremely, even if the deed had not purported to be executed by her. Again: Without an entire change of words as aforesaid, a covenant by A. binding himself and his heirs, to warrant against himself and his heirs, cannot be likened to a deed to warrant against J. S. and his heirs; because, in this latter case, if J. S. or his heirs claim, as they may, in the lifetime of A. then he will be barred by the warranty; but, the other, none can claim who can be called his heirs, in his life-time; and consequently the warranty can only bo broken by his heirs, whether they claim under him or not, after his death. So that he could never be bound or prejudiced by such warranty.
Being met by these difficulties on all sides, what can we say more, than that the parties may have intended something else than the literal interpretation of the deed will lead us to ? But, what that interpretation is, it is impossible for us, from the case now before us, to discover; and that, therefore, as the letter of the deed contains no war- *559 f-anty against her, or her heirs, though they may ho his heirs also, it presents no bar to the recovery.
This view of the ease relieves one from the necessity of a minute enquiry into other important points in this case, concerning some of which, it might possibly be necessary to have a new trial, in order to ascertain certain facts, not found in this verdict.
As I understand the doctrine of collateral warranty, at present, it was binding on the heir on whom it descended, on the legal presumption that the ancestor would not disinherit his heir, without making him compensation; and this the rather, because, if the heir had doubts about this, he could enter at once, and avoid the warrant}’. But, if lie did not do this, in the life-time of the person aliening, he was estopped afterwards from doing it. But, then, in order thus to bar him, the estate must be displaced, or put to a right, before or at the time of the warranty made. For, he who is in possession, need not put in his claim to avoid she collateral warranty. Co. Litt. 366, a; Ib. 373, b, n. 2; Ib. 367, b, n. 1; 10 Co. 97, a; Co. Litt. 388, a, b. The heir, too, must be of age, so as to he capable of thus protecting himself by entry. Co. Litt. 380, a, b. How the fact was, in relation to this matter, we do not know.
In ,10 Co. 97, a, it is stated to he a maxim in law, that no warranty shall extend to bar any estate of freehold or inheritance, which is in esse, in possession, remainder, or re - version, and not displaced and put to a right, before or at the time of the warranty made, although afterwards, am! at the time of the descent of the warranty, the estate of freehold or inheritance he displaced and divested; but, where the right is not in esse in the heir, or any of his ancestors, at the time of the fall of the warranty, that it shall not bind, Co. Litt. 388, b. Now, what was the situation of this estate, at the time the warranty was made?
¿inn Dent was tenant for life, with a contingent remainder in fee, to any child or children she might have; and, in case she should die without ever haying had such child. *560 then in remainder, dependent on this contingency, in fee, to Mrs. Duncanson, and any other children of Mrs. M’Cauley; similar to the case of Loddington v. Kyme, 1 Salk. 224, and other cases decided since that. It seems from that case, that this remainder would not even vest in Mrs. Duncanson, until after the death of Mrs. Dent, who survived her.
During the life of Mrs. Duncanson then, her husband, . the warrantor in this case, neither had, nor could he have, possession in her right. He could only have taken such possession, in the event that his wife had survived Mrs. Dent; so, that if he had never made the deed in question, he could not, after the death of Mrs. Dent, his wife having died first, been entitled as tenant by the courtesy; no, not even if he had purchased in Mrs. Dent’s life-estate, and been thus in the possession of the land; but, even this is not pretended. Suppose he had not made this sale and conveyance, until after the deaths of his wife and of Mrs. Dent, and he had then entered, claiming as tenant by the ‘ courtesy, and sold and made a deed, binding himself and his heirs to a general warranty, this in fact would have been nothing more than a disseisin; the conveyance would not be by one entitled to courtesy; and, consequently, the warranty would be void as beginning by disseisin; and, if not, the heirs of the wife would not have been protected by the statute of Gloucester; but, being his heirs, would be barred, assets or not, our statute, similar to that of 4 Anne, ch. 10, not being then in force. But, the estate would then have been displaced and put to a right, by him, and his children would have, entered and avoided the warranty; that is, this would have been a collateral , warranty at common law, not within, or protected by the statute of Gloucester. But, if this warranty binds, the consequence is, that a conveyance and warranty, made before the remainder vested in his wife, and before he had ■ any right or title whatever, would avail more than one made by him as tenant by the courtesy, after issue, death *561 of the wife and possession. In this last case, the heirs of his wife could have entered and avoided the warranty; and if not of age, would have been protected on that score, and at all events, would have been protected by the statute of Gloucester (which, I take it for granted, was in force here, until we passed a similar one) and would not have been barred without assets.
The deed containing this clause of warranty too, is made, not only by one having no title, either in possession, reversion, or remainder; but, at most, only a mere possibility of right, and that partly dependent on his own will or pleasure, to get possession or not of the land, even if he should ever have the right to do so; but is made to one who had nothing in the land,—no previous estate, either by disseisin or otherwise. Co. Litt. 385, a. It is, moreover, not a deed of feoffment with livery of seisin, which might have displaced or disseised the right of some one; in which case the warranty might even have been void as beginning by disseisin; it was a deed of bargain and sale by one who, we must presume, was out of possession, as the title was in Mrs. Dent; and, which would not, therefore, even displace or divest her rights, so as to make an entry by her, necessary to avoid the warranty, had it descended on her; much less, it appears to me, could it divest a contingent remainder in his wife, which had not yet vested in her. He could not even have destroyed that remainder by a feoffment, or by fine and recovery, in England.
If this warranty, then, had been a general one, against himself and his wife, and all persons claiming under them, I do not see how it could be decided to be a good collateral warranty at common law, so as to bar his heirs claiming under their mother, whether they have assets or not.
This, as before said, I do not consider a conveyance by a tenant by the courtesy. "He never was such. During the life of his wife, he never had a right to one moment’s possession of the land, nor could he have had, in the event 1 *562 that happened, any such right after her death. It is, thereforej not a case covered by the statute of Gloucester; and if it is a collateral warranty, binding on his heirs, they must be bound, as it appears to me, assets or no assets, as at common law.
This renders it unnecessary for me to decide, whether, if this was a conveyance and warranty, within the statute of Gloucester, or our statute, and that to bar them, they must have assets, those assets must be by descent, or whether assets by devise is enough. My present impression is, that they must be by descent. My Lord Coke says, “they must be by descent, not by purchase or gift Co. Litt. 374, b. Suppose the lands warranted to be worth $10,000, and lands devised of the same value; but, $ 9,800 worth is given to one, and $ 100 each to two; and that the three are entitled equally to the lands warranted. Two of them, who are entitled to two-thirds, have then not received assets, either by descent or devise, of value equal to that which they are to lose. Again. As well the statute of Gloucester, as our statute, speaks of assets by descent.
I must be understood, however, as only throwing out my present impression on this point; inasmuch as, from the views before taken of the case, it is, perhaps, not important to decide this question.